UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHNNY L. FRANKLIN,

          Plaintiff,

    v.

F. FOULK, et al.,

          Defendants.

No.  2:14-cv-00057 KJM DB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff proceeds on his first amended complaint against defendants Dr. Rohlfing, Dr. Swingle, and Dr. Lee for medical indifference in violation of the Eighth Amendment. Pending now is defendants' April 20, 2017, motion for summary judgment, which plaintiff opposes. This matter is fully briefed and ready for disposition.

I.      **Plaintiff's Allegations**

The actions complained of occurred while plaintiff was housed at High Desert State Prison ("HDSP") in Susanville, California. Dr. Swingle was the HDSP Chief Medical Executive, Dr. Lee was the HDSP Chief Physician and Surgeon, and Dr. Rohlfing was a HDSP medical doctor who served as plaintiff's primary care provider ("PCP").

During plaintiff's several visits with Dr. Rohlfing, plaintiff complained of pain and bleeding related to the hemorrhoids. Dr. Rohlfing allegedly told plaintiff repeatedly that he was

1

not qualified as a specialist in hemorrhoids and that he would issue only adult briefs and a temporary Medical Classification Chrono (CDCR 128-C3) for "no sitting." Dr. Rohlfing never actually physically examined plaintiff during these medical visits.

Dr. Lee, who was notified whenever a referral for an outside specialist was submitted, was aware of plaintiff's hemorrhoids condition but failed to perform the required surgeries and operations to effectively treat plaintiff. Dr. Lee also never actually physically examined plaintiff.

Dr. Swingle personally reviewed plaintiff's Unit Health Records and Dr. Rohlfing's orders. Despite awareness of plaintiff's condition, this defendant never gave plaintiff any medical treatment or assistance.

## II.    Undisputed Facts

Plaintiff suffers from hemorrhoids. See First Am. Compl. ¶ 14. He arrived at HDSP on July 19, 2011, and transferred out on April 22, 2014. Decl. of D. Swingle in Supp. of Defs.' Mot. Summ. J. (ECF No. 98-4) ¶ 4.

Following his arrival at HDSP, plaintiff was treated for his hemorrhoids by a board certified colorectal specialist, Dr. Dale Syverson.[1] Decl. of J. Rohlfing in Supp. of Defs.' Mot. Summ. J. (ECF No. 98-3) ¶ 4, Attach. at 1-3. On May 15, 2012, Dr. Syverson performed a colonoscopy which revealed internal hemorrhoids and numerous diverticula in the colon. Plaintiff was seen by Dr. Syverson again on June 25, 2012, and on July 23, 2012.

### A.    Defendant Rohlfing

During all relevant times, Dr. Rohlfing was employed at HDSP as a Physician and Surgeon. Rohlfing Decl. ¶ 3. Dr. Rohlfing began treating plaintiff on October 24, 2012, when plaintiff complained of fecal incontinence and rectal bleeding since the May 2012 colonoscopy performed by Dr. Syverson. Rohlfing Decl. ¶ 6, Attach. at 4. Since Dr. Rohlfing was not a colorectal specialist and since plaintiff had already been treated by Dr. Syverson, Dr. Rohlfing

---

[1] Dr. Syverson was originally named as a defendant in this case but the previously-assigned magistrate judge issued findings and recommendations to dismiss him for plaintiff's failure to state a medical indifference claim. (ECF No. 51.) The court determined that plaintiff's claims, at best, amounted to negligence or medical malpractice but not deliberate indifference. These findings and recommendations were adopted in full, and Dr. Syverson was thus dismissed as a party. (ECF No. 59.)

completed a Physician Request for Services ("RFS") for a referral to Dr. Syverson. Rohlfing Decl. ¶ 6, Attach. at 5.

Pursuant to Dr. Rohlfing's request, plaintiff was seen by Dr. Syverson on November 19, 2012, who recommended plaintiff for a stapled hemorrhoidopexy. Rohlfing Decl. Attach. at 5-6. This is a surgical procedure that involves the repositioning of the remaining hemorrhoidal tissue back to its normal anatomic position. Rohlfing Decl. ¶ 7. After being informed of the risks of the procedure, plaintiff agreed to have it. Rohlfing Decl. Attach. at 6.

Dr. Syverson performed the stapled hemorrhoidopexy on December 18, 2012. Rohlfing Decl. Attach. at 7.

On January 10, 2013, Dr. Rohlfing evaluated plaintiff after the procedure. Rohlfing Decl. ¶ 9, Attach. at 8. Plaintiff appeared to be "doing OK" with no major complaints.

Dr. Rohlfing saw plaintiff again on January 25, 2013. Rohlfing Decl. ¶ 10, Attach. at 9-10. Plaintiff again had no major complaints and was awaiting a follow-up appointment with Dr. Syverson. In the meantime, Dr. Rohlfing ordered Depends for any incontinence and planned to see plaintiff back in 7-10 days.

Plaintiff's next appointment with Dr. Rohlfing was on February 1, 2013. Rohlfing Decl. ¶ 11, Attach. at 17. Plaintiff complained that he was still draining and had difficulty sitting. Since plaintiff was scheduled to see Dr. Syverson the following week, Dr. Rohlfing scheduled plaintiff's next visit for 60-90 days out.

On February 4, 2013, plaintiff was seen by Dr. Syverson. Rohlfing Decl. ¶ 12, Attach. at 12. Plaintiff complained of drainage from his anus, occasional bleeding, and pain when sitting on hard surfaces. Upon examination, Dr. Syverson thought that there could be a possible stricture at the stapled anastomosis. He recommended an anorectal anastomosis dilation under anesthesia.

Dr. Syverson performed the anorectal dilation under anesthesia on February 7, 2013. Rohlfing Decl. ¶ 13, Attach. at 13-14.

Dr. Rohlfing saw plaintiff one week later on February 12, 2013. Rohlfing Decl. ¶ 14, Attach. at 15. Plaintiff indicated he was doing better and had no other unrelated complaints. Dr. Rohlfing prescribed him Tylenol with Codeine for pain.

Dr. Rohlfing saw plaintiff again on March 15, 2013. Rohlfing Decl. ¶ 15, Attach. at 16. . During this meeting, plaintiff sought a transfer to a medical facility after complaining about continued draining from his anus and other hemorrhoid problems. Dr. Rohlfing, however, believed plaintiff could be adequately treated at HDSP in conjunction with Dr. Syverson. Since plaintiff had a follow-up scheduled with Dr. Syverson, Dr. Rohlfing continued his pain medication and provided him with a "lay-in" for two weeks, which would permit him to be cell fed and not have to sit on the hard stools in the dining hall.

Dr. Syverson next saw plaintiff on March 18, 2013. Rohlfing Decl. ¶ 16, Attach. at 17. Plaintiff's complaints included pain when sitting and blood and mucus in his stool. Dr. Syverson recommended that they wait to see if the symptoms resolved and recommended seeing him back in about a month.

On March 29, 2013, Dr. Rohlfing saw plaintiff again. Rohlfing Decl. ¶ 17, Attach. at 18-19. Plaintiff's condition was relatively unchanged and he had no other unrelated complaints. Since plaintiff was scheduled to see Dr. Syverson again, Dr. Rohlfing continued the lay-in and briefs.

On April 8, 2013, Dr. Syverson saw plaintiff. Rohlfing Decl. ¶ 18, Attach. at 20-21. Plaintiff complained of continued perianal pain when sitting, especially on hard surfaces, and he still had blood and mucus in his stools. Following an examination, Dr. Syverson recommended another anorectal dilation under anesthesia.

Dr. Rohlfing met with plaintiff on April 22, 2013. Rohlfing Decl. ¶ 19, Attach. at 22-23. Plaintiff's complaints were related to his ongoing issues that were being addressed by Dr. Syverson, who was scheduled to perform a dilation procedure under sedation. Dr. Rohlfing continued plaintiff on his medication, ordered him more briefs, and extended his lay-in for another month.

On May 14, 2013, Dr. Syverson performed an examination and dilation under anesthesia. Rohlfing Decl. ¶ 20, Attach. at 24.

Between May and July 2013, plaintiff was seen by other medical professionals. Rohlfing Decl. ¶ 21.

4

Dr. Syverson next saw plaintiff on July 15, 2013. Rohlfing Decl. ¶ 22, Attach. at 25-26. Plaintiff continued to complain of pain when sitting on hard surfaces as well as perianal soiling. Dr. Syverson's assessment was: "Persistent problems with anal stenosis. The patient also has some psychological concerns about perianal soiling and other concerns that may or may not be as much as reality of perianal hygiene concerns as more perhaps related to obsessive-compulsive ideation about uncleanliness and phobia regarding body odor. However, the patient may yet benefit from dilation of the anal canal. He is not able to tolerate this in the office and therefore should probably be done under anesthesia." Dr. Syverson then scheduled the procedure.

Dr. Rohlfing saw plaintiff on July 29, 2013. Rohlfing Decl. ¶ 23, Attach. at 27-28. Plaintiff's complaints continued to relate to his ongoing issues that were being addressed by Dr. Syverson. Accordingly, Dr. Rohlfing extended plaintiff's lay-in.

On August 8, 2013, Dr. Rohlfing saw plaintiff again. Rohlfing Decl. ¶ 24, Attach. at 29. This visit was not related to hemorrhoids but instead left shoulder pain and left arm numbness.

Plaintiff had a follow-up appointment with Dr. Rohlfing on August 19, 2013, related to his shoulder pain. Rohlfing Decl. ¶ 25, Attach. at 30. Dr. Rohlfing determined that plaintiff was fine and needed no further treatment for any cardiac issue. He also issued a chrono that would permit plaintiff not to have to sit for six months. Rohlfing Decl. Attach. at 31.

On August 22, 2013, Dr. Syverson performed the dilation of Mr. Franklin's anal canal that he had recommended previously. Rohlfing Decl. ¶ 26, Attach. at 32-33. Dr. Syverson also performed a sigmoidoscopy and noted that everything appeared normal.

Dr. Rohlfing next saw plaintiff on September 5, 2013. Rohlfing Decl. ¶ 27, Attach at 34-35. Plaintiff denied having any chest pain and did not present with any other cardiac-related symptoms. Dr. Rohlfing's notes indicate that plaintiff had just had a procedure performed by Dr. Syverson related to anal stenosis, and that issue would continue to be managed by Dr. Syverson. Plaintiff was then directed to return to the clinic in 60-90 days, and Dr. Rohlfing continued to prescribe briefs.

Dr. Syverson saw plaintiff on September 16, 2013. Rohlfng Decl. ¶ 28, Attach. at 36. Dr. Syverson noted that he was seeing some improvement and that there was no longer any anal

stenosis. However, plaintiff was still having some small amounts of seepage and still experiencing some minimal discomfort. Dr. Syverson thus recommended that plaintiff ensure that he was getting enough dietary fiber and that he may benefit from seeing a dietician.

On September 30, 2013, Dr. Rohlfing met with plaintiff. Rohlfing Decl, ¶ 29, Attach. at 37-38. He noted that the prison did not have a dietician, but that fiber tablets were available, which he prescribed for plaintiff and instructed him on how to properly take them with the hope that the fiber would help. Dr. Rohlfing also renewed his briefs.

Dr. Rohlfing last saw plaintiff on October 28, 2013. Rohlfing Decl. ¶¶ 30-31, Attach. at 39. This visit was not in relation to his ongoing hemorrhoid problem, but rather related to his previous complaint of chest pain for which was seen in the TTA (a mini-emergency room in the prison) on October 25, 2013. There, plaintiff was treated by Dr. Pomazal, who performed a full work-up and determined that it was non-cardiac chest pain. Plaintiff was discharged with instructions to follow up with his primary care provider. When Dr. Rohlfing saw plaintiff on October 28, 2013, he was asymptomatic, appeared to be fine, and had no issues. They decided to continue his present course of treatment.

### B. Defendants Swingle and Lee

During all relevant times, Dr. D. Swingle was employed at HDSP as the Chief Medical Executive. Swingle Decl. ¶ 3. In that position, Dr. Swingle worked primarily in an administrative capacity and was in charge of the entire HDSP medical department. Id. As part of her duties, Dr. Swingle would be notified of requests to refer an inmate-patient to outside specialists and was generally aware of an inmate-patient's referral to and treatment by an outside specialist. Id. Dr. Swingle would also review health care appeals that were accepted for review by the Health Care Appeals Office at HDSP and would be responsible for responding to those appeals at the second level of review. Id.

Dr. Lee was employed at HDSP as the Chief Physician and Surgeon. Decl. of B. Lee in Supp. of Defs.' Mot. Summ. J. (ECF No. 98-5) ¶ 3. In that role, Dr. Lee worked primarily in an administrative capacity and was generally responsible for the oversight of the medical doctors as well as their treatment of the inmates at HDSP. Id. Like Dr. Swingle, Dr. Lee would be notified

of requests to refer an inmate-patient to outside specialists and was generally aware of an inmate-patient's referral to and treatment by an outside specialist. Id. Dr. Lee would also review health care appeals that were accepted for review by the Health Care Appeals Office at HDSP and would be responsible for responding to those appeals at the first level of review. Id.

During the period that plaintiff was housed at HDSP, neither Dr. Swingle nor Dr. Lee ever personally examined or treated him. Swingle Decl. ¶ 4; Lee Decl. ¶ 4.

Dr. Swingle and Dr. Lee's first involvement with plaintiff involved medical appeal Log No. HDSP-HC-11025059. Swingle Decl. ¶ 5, Ex. A. In this appeal, which was accepted for review on September 26, 2011, plaintiff was requesting to see a specialist regarding a headache, a skin lesion, and an issue with his fingernail. The appeal was denied at the first level of review by Dr. Lee on October 25, 2011. Dr. Swingle then denied the appeal at the second level of review on December 6, 2011.

Dr. Swingle and Dr. Lee's second involvement with plaintiff involved medical appeal Log No. HDSP-HC-12026681. Swingle Decl. ¶ 6, Ex. B. In this appeal, which was accepted for review on October 22, 2012, plaintiff requested a specialist due to blood in his stool. In response to the appeal, Dr. Rohlfing evaluated plaintiff on October 24, 2012, and completed a RFS on October 26, 2012, requesting that plaintiff be seen for further consult by Dr. Syverson. Dr. Lee partially granted the appeal at the first level of review after noting that Dr. Rohlfing had submitted an RFS for a referral. By the time Dr. Swingle partially granted plaintiff's appeal at the second level of review on January 17, 2013, plaintiff had already been referred to Dr. Syverson and had a hemorrhoidopexy performed by him.

Dr. Swingle and Dr. Lee's third involvement with plaintiff involved medical appeal Log No. HDSP-HC-13026983. Swingle Decl. ¶ 7, Ex. C. This appeal was accepted for review on March 1, 2013. There, plaintiff requested to be transferred to a "suitable" medical facility. In response, Dr. Rohlfing evaluated plaintiff on March 15, 2013, and determined that plaintiff could be adequately treated at HDSP. Dr. Lee concurred in Dr. Rohlfing's assessment and denied the appeal at the first level of review on April 3, 2013. Dr. Swingle then denied the appeal at the second level of review on May 16, 2013.

Dr. Lee was then involved in two more appeals filed by plaintiff. Lee Decl. ¶¶ 8-9, Exs. D-E. In Log No. HDSP-HC-13027756, which was accepted for review on December 17, 2013, plaintiff requested to be cell fed so that he did not have to sit in the dining hall. Plaintiff was interviewed regarding this appeal by Nurse Practitioner Schmidt, to whom plaintiff admitted that he could sit for fifteen minutes without too much pain and that he could complete his meals in the dining hall within fifteen minutes. Plaintiff denies that he ever told this nurse that he could sit for fifteen minutes without too much pain. Nurse Schmidt in fact issued a chrono on December 5, 2013, limiting plaintiff to sitting for fifteen minutes. Since Dr. Lee did not believe that plaintiff needed to be cell fed, she denied plaintiff's appeal at the first level of review on January 17, 2014. See Pl.'s Decl. ¶ 8.

In Log No. HDSP-HC-14028007, which was accepted for review on March 25, 2014, plaintiff requested briefs or pads to keep dry as a result of anal leakage; he also sought a referral to a skin specialist. Dr. Lankford evaluated plaintiff on April 15, 2014, in response to the appeal. Dr. Lankford confirmed that adult diapers had been ordered and provided to plaintiff. He also determined that plaintiff's skin condition was minor and could be treated with anti-fungal cream. Dr. Lee concurred and denied plaintiff's appeal at the first level of review on April 23, 2014.

Dr. Swingle and Dr. Lee also reviewed some of plaintiff's requests for services. Swingle Decl. ¶ 8; Lee Decl. ¶ 10. With the exception of plaintiff's request to see a dermatologist, which neither Dr. Swingle nor Dr. Lee thought was necessary, all of requests were approved. Dr. Swingle approved plaintiff's visits with Dr. Syverson on May 14, 2013, and August 22, 2013, both of which were rectal dilations under anesthesia. Dr. Lee approved Dr. Rohlfing's October 26, 2012, request that plaintiff be seen by Dr. Syverson, approved a rectal exam under anesthesia by Dr. Syverson, and approved plaintiff's request to be seen by a dietician.

### III.    Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627

F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." <u>Oracle Corp.</u>, 627 F.3d at 387 (citing <u>Celotex</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 569(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u>

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809

////

F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**IV.    Discussion**

While the Eighth Amendment of the United States Constitution entitles plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of

pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

In appropriate cases, however, a prisoner may state a claim of deliberate indifference to medical needs based on a difference of medical opinion. To do so, the prisoner must show that "the course of treatment the doctors chose was medically unacceptable under the circumstances," and that they "chose this course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).

Plaintiff's claim in this case is premised on the pain and symptoms he experienced following the December 18, 2012, stapled hemorrhoidopexy performed by Dr. Syverson. Plaintiff disputes the defendants' interpretation of the medical records, which plaintiff claims minimizes his pain and symptoms. Instead, plaintiff argues that the records show the ongoing and severe nature of his problems, including pain, blood and mucus in his stools, and inability to sit on hard surfaces. Despite these repeated complaints, the defendants failed to properly treat him. In his opposition, plaintiff asserts that he received a different sort of treatment following his transfer to Calipatria State Prison, which proved effective in dealing with his pain and hemorrhoids.

Specifically, his new care provider looked into the possibility that Dr. Syverson's performance of the surgery caused plaintiff's problems – that is, the staple inserted by Dr. Syverson should have been placed only temporarily, not permanently. They staple was thus removed, which had the effect of relieving plaintiff's pain and related symptoms.

On review, the undersigned will recommend that the defendants' motion for summary judgment be granted because the undisputed facts fall short of demonstrating deliberate indifference on the part of any of them. Turning first plaintiff's claim against Dr. Rohlfing, the evidence reveals that, in response to plaintiff's serious medical needs, Dr. Rohlfing continually referred plaintiff to Dr. Syverson, a colorectal specialist who had previously treated plaintiff, for further evaluation and treatment. Dr. Rohlfing also prescribed pain medication, issued multiple lay-ins so that plaintiff would not need to sit on hard surfaces, and ordered briefs in response to the rectal leakage. In fact, during the one-year period when Dr. Rohlfing treated plaintiff, plaintiff was seen by him or by Dr. Syverson at least 24 times. Plaintiff has presented no evidence that this care and treatment was deliberately indifferent to his medical needs.

While plaintiff claims that "[a]ny adequate PCP" would have considered the possibility that Dr. Syverson's treatment itself was the issue, plaintiff has not submitted any evidence to show that Dr. Rohlfing's reliance on Dr. Syverson's treatment or his alleged failure to consider Dr. Syverson as the source of plaintiff's problems fell below a constitutional standard of care, and there is no dispute that plaintiff is not a qualified medical specialist to so opine. Cf. Snow, 681 F.3d at 987 (triable issues as to deliberate indifference when defendants disregarded recommendations of specialists); Colwell v. Bannister, 763 F.3d 1060, 1069-70 (9th Cir. 2014) (triable issue as to deliberate indifference when prison officials disregarded recommendations of inmate's treating eye specialists). At best, plaintiff's claim against Dr. Rohlfing is premised on plaintiff's disagreement with the course of action taken by Dr. Rohlfing. This, however, is insufficient to impose liability under the Eighth Amendment. Accordingly, summary judgment should be entered for Dr. Rohlfing.

As for plaintiff's claims against Dr. Swingle and Dr. Lee, it is undisputed that neither had ever met nor physically examined plaintiff. Nonetheless, each was involved in processing

plaintiff's health care related appeals and health care requests. If these defendants became aware that plaintiff had a serious medical need that was not being addressed by his medical providers and they had the ability to grant relief, this could be sufficient to show that they knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 847; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); see also Nelson v. California Dep't of Corr., 2003 WL 946412, at *6 (N.D. Cal. Mar. 3, 2003), aff'd, 76 F. App'x 130 (9th Cir. 2003) (to raise triable issue of fact plaintiff must show that medical appeal coordinator knew that not rushing test would result in substantial risk of medical harm), but see Peralta, 744 F.3d at 1086 (Chief Medical Officer not deliberately indifferent where he signed off on dental appeal and relied on medical opinions of staff dentists who investigated the complaints).

Dr. Swingle and Dr. Lee were jointly involved in the processing of three inmate health care appeals filed by plaintiff, two of which are relevant to the facts at issue in this case. In medical appeal Log No. HDSP-HC-12026681, plaintiff requested a specialist due to blood in his stool. In response, Dr. Rohlfing submitted a RFS requesting that plaintiff be seen for further consult by Dr. Syverson. Dr. Lee partially granted the appeal at the first level of review after noting that Dr. Rohlfing had submitted an RFS for a referral. By the time Dr. Swingle partially granted plaintiff's appeal at the second level of review, the RFS had been granted and plaintiff had already been seen by the specialist. There is no deliberate indifference on these facts since plaintiff received what he requested.

In medical appeal Log No. HDSP-HC-13026983, plaintiff requested to be transferred to a "suitable" medical facility to treat his hemorrhoid condition. In response, Dr. Rohlfing evaluated plaintiff and determined that plaintiff could be adequately treated at HDSP with outside referrals to Dr. Syverson. Both Dr. Lee and Dr. Swingle concurred in Dr. Rohlfing's assessment. While plaintiff claims, without evidentiary support, that this assessment was incorrect, there is no evidence that Dr. Swingle and Dr. Lee consciously disregarded an excessive risk to plaintiff's health by relying on Dr. Rohlfing's assessment. See Peralta, 744 F.3d at 1086; Rapalo v. Lopez, No. 1:11-cv-01695 LJO BAM, 2017 WL 931822, at *17 (E.D. Cal. Mar. 9, 2017) (chief medical officer "had a right to rely on the judgment of Plaintiff's treating physicians…").

13

Dr. Lee was then involved in two more appeals filed by plaintiff. In medical appeal Log No. HDSP-HC-13027756, plaintiff requested to be cell fed so that he did not have to sit in the dining hall. Although plaintiff denies that he told Nurse Schmidt that he could sit for fifteen minutes at a time, Dr. Lee's reliance on Nurse Schmidt's evaluation in denying plaintiff's appeal at the first level of review does not establish deliberate indifference. See Rapalo, 2017 WL 931822, at *17. Similarly, in Log No. HDSP-HC-14028007, plaintiff requested, in relevant part, briefs or pads to keep dry as a result of anal leakage. Dr. Lankford, who evaluated plaintiff in response to the appeal, confirmed that adult diapers had been ordered and provided to plaintiff. Dr. Lee reliance and concurrence with that opinion also does not establish deliberate indifference.

Plaintiff again asserts that these defendants should have known that plaintiff's ongoing problems following the December 2012 surgery should have alerted Dr. Swingle and Dr. Lee that "[i]t was medically necessary to get a second expert …." Pl.'s Resp. to Defs.' Statement of Undis. Facts (ECF No. 105 at 22). Plaintiff, though, is not a medical expert to opine on the necessity of procuring a recommendation from another specialist, and he has presented no testimony from a medical expert in support of this position.

**V.     Conclusion**

Based on the foregoing, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 98) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties

////

////

////

////

14

are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 11, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB7;
DB/Orders/Substantive/fran0057.msj